UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KELLY NOVO,
*Plaintiff*,

v.

CITY OF DANBURY, DAVID
PARDOVICH, CHRISTOPHER RINK,
ERIC CIEPLY, & PATRICK RIDENHOUR,
*Defendants*.

No. 3:18-cv-907 (VAB)

**RULING AND ORDER ON MOTIONS TO DISMISS AND AMEND**

Kelly Novo ("Plaintiff") has sued David Pardovich, Christopher Rink, and Eric Cieply, officers of the Danbury Police Department, as well as Patrick Ridenhour, the Chief of Police, and the City of Danbury ("Danbury," and together, "Defendants") for negligence, recklessness, and violation of her state and federal rights. Compl., ECF No. 1-1, ¶¶ 3–7, 21, 23.

Defendants have moved to dismiss Counts Three, Five, and Six of Ms. Novo's Complaint. Mot. to Dismiss, ECF No. 16.

Ms. Novo also has moved to amend her Complaint to remove the claim for emotional distress damages. Mot. for Ct.'s Leave to Am. Compl., ECF No. 20.

For the reasons set forth below, the motion to dismiss, ECF No. 16, is **GRANTED IN PART AND DENIED IN PART**. The negligent training and supervision claim is dismissed with respect to Chief Ridenhour, but the claims against the City of Danbury and the claim of recklessness remain in the case.

Because this ruling may result in Ms. Novo seeking to amend her Complaint yet again, Ms. Novo's motion to amend her Complaint, ECF No. 20 is **DENIED** without prejudice to renewal by **August 9, 2019.**

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Factual Allegations**

On December 21, 2016, when officers Pardovich, Rink, and Cieply arrived, Ms. Novo was at home. *Id*. ¶¶ 3–7. The officers allegedly tried to enter Ms. Novo's home and she denied them access. *Id*. ¶ 8. The officers allegedly entered anyway. *Id*. ¶ 9. "Suddenly and without warning," the officers allegedly made physical contact with Ms. Novo. *Id*. ¶ 10. As a result, Ms. Novo allegedly suffered a "Grade 3 midsubstance ACL tear in her right knee; contusion of the right posterolateral tibial plateau; [and] injury to the left arm." *Id*. ¶ 14. Ms. Novo claims that she required medical treatment, incurred expenses, experienced suffering, was unable to work, and will continue to experience financial losses and physical pain. *Id*. ¶¶ 15–20.

Ms. Novo alleges that Chief Ridenhour negligently trained and supervised his officers. *Id*. [Third Count] ¶¶ 12–15. She also claims that the City of Danbury has a general policy, pattern, or practice of "not disciplining police officers for their conduct thereby sanctioning [their] actions," *id*. [Fifth Count] ¶ 21 and willfully or deliberately failing to supervise or train its officers regarding Danbury residents' legal rights. *Id*. ¶¶ 22–23. Ms. Novo argues that the police officers, their Chief, and Danbury should be held liable for her injuries, all allegedly sustained on December 21, 2016. *Id*. [Third Count] ¶ 15, [Fifth Count] ¶ 23.

B. **Procedural Background**

On May 9, 2018, Ms. Novo filed a Complaint in Connecticut Superior Court. Compl., ECF No. 1-1.

On May 30, 2018, Defendants removed the lawsuit to this Court under 28 U.S.C. § 1331. Notice of Removal, ECF No. 1, ¶ 2–3.

On July 13, 2018, the parties filed their report under Federal Rule of Procedure 26(f). Joint Report of Rule 26(f) Planning Meeting, ECF No. 10. The Court then convened a telephonic scheduling conference, Min. Entry, ECF No. 12, and issued a scheduling order, ECF No. 13.

On September 19, 2018, Defendants moved for partial dismissal under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss.

On October 9, 2018, Ms. Novo moved for an extension of time to respond to the motion to dismiss. First Mot. for Extension of Time to File Resp./Reply, ECF No. 17. The Court granted Ms. Novo's motion. Order, ECF No. 18.

On October 23, 2018, Ms. Novo objected to the motion to dismiss. Obj. to Mot. to Dismiss ("Pl. Obj."), ECF No. 19.

On March 13, 2019, Ms. Novo moved to amend her Complaint, and set a response deadline of April 3, 2019. Mot. for Ct.'s Leave to Am. Compl.

On July 10, 2019, the Court convened a hearing on the motion to dismiss and the motion to amend the Complaint. Min. Entry, ECF No. 25.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

## III. DISCUSSION

### A. Count Three: The Negligent Training and Supervision Claim

A negligent training and supervision claim under Section 1983 may be sustained, if one or more of the following five actions have occurred: (1) actual and direct participation in an alleged constitutional violation; (2) a failure to remedy a wrong after being informed of it through a report or appeal; (3) the creation or approval of a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) gross negligence in the supervision of the officers who committed the alleged constitutional violation; or (5) acted with deliberate indifference to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Shaw v. Prindle*, 661 Fed. Appx. 16, 18 (2d Cir. 2016) (defining elements of supervisory liability and citing *Colon*); *Shakir v. Derby Police Dep't*, 284 F. Supp. 3d 165, 181–82 (D. Conn. 2018) (following *Colon* because, although acknowledging that *Iqbal* may have established heightened pleading requirements for supervisory liability, the Second Circuit has not rejected the standard in *Colon* and the Second Circuit has not addressed how *Iqbal* affects *Colon*).

In Count Three, Ms. Novo alleges that Chief Ridenhour negligently trained or supervised his officers, Compl. [Third Count] ¶¶ 12–14, and that Ms. Novo "sustained injuries and damages . . . as a result of this negligent training and supervision." *Id*. at ¶ 14. She sues for violation of her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. *See* Pl. Obj. at 4. Alternatively, she argues that the Chief "created a policy or custom under which an unconstitutional practice [could] occur." *Id*. at 5.

Defendants argue that Chief Ridenhour was not personally involved in the events at issue, and that Ms. Novo has not alleged that the Chief "created a policy or custom under which unconstitutional practices occurred." Mem. of Law in Supp. of Rule 12(b)(6) Mot. to Dismiss ("Def. Mem."), ECF No. 16, at 6–7. Defendants argue that Count Three should be dismissed because Ms. Novo cannot establish a negligent training or supervision claim. *Id*. at 4.

The Court agrees.

As the Supreme Court made clear in *Iqbal*: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but not show[n] — that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations and quotation marks omitted). Here, Defendants rightly raise the issue of whether Ms. Novo's Complaint should be more specific with respect to the claims against Chief Ridenhour, even at this stage of the case. The answer is yes.

While Ms. Novo has alleged that the officers involved failed to do a number of things, even things allegedly required by the Danbury Police Department, she has failed to allege, other than in the most cursory way, how Chief Ridenhour's role in their training and supervision specifically resulted in the constitutional injuries alleged here. *See* Complaint at Compl., ECF No. 20-1, Third Count, ¶ 13 ("Ridenhour was responsible for the training and supervision of

5

Pardovich, Rink, and Cieply, and should have foreseen that without proper training and supervision Pardovich, Rink, and Cieply would violate the constitutional rights individuals including the rights of Ms. Novo."). From these allegations, it is not clear whether Chief Ridenhour failed to train and supervise these officers with respect to the specific problems which allegedly resulted in the violation of Ms. Novo's rights as well as her alleged injuries. As a result, these allegations only raise "the mere possibility of misconduct" by Chief Ridenhour, but do not allege the necessary entitlement to relief.

Accordingly, Ms. Novo's negligent training and supervision claim against Chief Ridenhour is dismissed without prejudice to renewal in an amended pleading.[1]

### B. Count Five: The Monell Claim

"Congress did not intend municipalities to be held liable [under section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658, 691 (1978). To prevail against a municipality under section 1983, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 284

---

[1] Defendants argue that Ms. Novo's "state-law tort claims arising out of the incident at issue" should be dismissed. Def. Mem. at 7. The Court disagrees. Ms. Novo's state law negligence claims against Chief Ridenhour will proceed for two reasons: (1) these claims are permissible under Connecticut law; and (2) the facts surrounding the Chief's role in these events are still at issue, at least at this stage of the case. *See Jones v. City of Hartford*, No. HHDCV126028774S, 2016 WL 5415654, at *5 (Conn. Super. Ct. Aug. 26, 2016)(dismissing similar claims at the summary judgment stage because "[i]n the present case, the plaintiff's allegations that Chief Roberts failed to train, manage, and supervise involve the exercise of judgment and discretion. Thus, the doctrine of governmental immunity bars the plaintiff's claim against Chief Roberts. Furthermore, the identifiable victim-imminent harm exception is not applicable to Chief Roberts because he was not personally involved in the arrest and detention of Robinson, had no personal knowledge or information concerning this incident on December 21, 2009, and as with Det. Rivera, he was not present at the time of the actions complained of.").

(D. Conn. 2012) (noting that to establish municipal liability, plaintiff must show that municipality violated federal right through municipal policy, custom, or practice or decision of municipal policymaker with final policymaking authority).[2]

A municipality can be held liable for acts or omissions that are "the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989)). "Under either a failure-to-train or failure-to-supervise theory, a municipality is liable . . . where the inadequate training or supervision amounts to 'deliberate indifference to the rights of person with whom the police come into contact.'" *Goode v. Newton*, No. 3:12CV754 JBA, 2013 WL 1087549, at *7 (D. Conn. Mar. 14, 2013) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); citing *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

To prevail on such claims, plaintiffs must show: (1) that a policymaker knows to a moral certainty that his or her employees will confront a given situation, (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992); *see also Reynolds*, 506 F.3d at 193. "Finally, Plaintiff ultimately must prove . . . a causal connection

---

[2] Defendants do not move to dismiss Ms. Novo's parallel state law claim against Danbury. *See* Am. Compl. [Second Count] (citing CONN. GEN. STAT. § 52–577n); *see Considine v. City of Waterbury*, 279 Conn. 830, 836 (2006) (describing the legislative history of § 52–577n); *Spears v. Garcia*, 263 Conn. 22, 24, 29, 46–47 (2003) (citations omitted) (establishing that a plaintiff may bring a direct cause of action for negligence against a municipality or its officer under this statute). To sustain these claims, Ms. Novo must demonstrate that her injuries were caused by "(A) [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent there of acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance[.]" CONN. GEN. STAT. § 52-557n; *see Mills v. The Sol., LLC*, 138 Conn. App. 40, 52, 50 A.3d 381, 390 (2012) (discussing the extent of a chief of police's duty to provide police protection at a carnival).

exists between the inadequacies in the training or supervision and Plaintiff's constitutional violations." *Goode*, 2013 WL 1087549 at *7 (citing *City of Canton*, 489 U.S. at 391); *see also White v. City of New York*, No. 17-CV-2404 (JPO), 2019 WL 1428438, at *3 (S.D.N.Y. Mar. 29, 2019) (quoting *Sarus v. Rotundo*, 831 F.2d 397, 401 (2d Cir. 1987)) (dismissing plaintiff's claims at the summary judgment stage but noting that "a municipality's 'persistent failure to [train or supervise] subordinates who violate civil rights could' give rise to *Monell* liability if the severity of such failure rises to the level of 'deliberate indifference to a plaintiff's rights.'").

Ms. Novo alleges that Danbury has a general policy, pattern, or practice of failing to train, supervise, or discipline officers who commit constitutional violations and that this policy, pattern or practice results in the violation of constitutional rights, including Ms. Novo's. Compl., Fifth Count, ¶¶ 21–23.

Defendants argue that Ms. Novo's Complaint allegations fall short of providing the detail required after the Supreme Court's decision in *Iqbal* and *Twombly*. Def. Mem. at 12–13.

The Court disagrees.

As discussed above, Ms. Novo's factual allegations must "permit the court to infer more than the mere possibility of misconduct." Although it is a close question, Ms. Novo has met that standard.

Ms. Novo has identified, at least sufficiently at this stage of the case, the general nature of the municipal policies or customs which are alleged to have resulted in the constitutional violation: "a general policy, pattern and/or practice of not disciplining police officers for their conduct thereby sanctioning the police officers' actions, which amounts to a departmental policy of overlooking constitutional violations." Compl. ¶ 21. This alleged "failure to supervise and train its police officers and its willful blindness toward constitutional violations by its employees,

8

constitutes willful misconduct and/or deliberate and conscious indifference to people's rights including Ms. Novo's rights . . . ." *Id.* at ¶ 22. And this alleged failure "to supervise and train its police officers" has resulted in Ms. Novo's "injuries and damages." *Id.* at ¶ 23 (alleging the suffering of injuries "for failing to supervise and train its police officers").

Given these allegations, as the Second Circuit recognized in *Walker*, "it does not appear 'beyond doubt' that [plaintiff] cannot prove this 'set of facts in support of his claim that would entitle him to relief.'" *Walker*, 974 F.2d at 300. Indeed, unlike *Wilson v. 103RD Precinct* — a case cited by Defendants — Ms. Novo has identified the three officers involved in the events of December 21, 2016, and their supervisor. *See Wilson v. 103RD Precinct*, 182 F.3d 902, 902 (2d Cir. 1999) (summ. order) (noting that plaintiff "made no attempt to seek discovery of the individual officer's identity").

Likewise, in another case cited by Defendants, *Bruno v. City of New York*, there the court dismissed the amended *Monell* claim because of the failure of the relevant complaint to make "any such allegation regarding a policy of the police department." *Bruno v. City of New York*, 89-cv-6661 (KMW), 1992 WL 84471, at *2 (S.D.N.Y. Apr. 15, 1992) ("In addition, plaintiff's only response to the City's arguments for dismissal is the erroneous assertion in her counsel's affidavit that the complaint properly alleges a claim, because the complaint states that the purported constitutional violations were pursuant to a custom, policy or practice of the City of New York Police Department. In fact, neither complaint makes any such allegation regarding a policy of the police department.") (alterations in original). Here, in contrast, Ms. Novo has identified a Danbury Police Department practice — the failure to address the violation of constitutional rights — which is the basis for her *Monell* claim.[3]

---

[3] Defendant also cites *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165–66 (1993). Decided before *Twombly*

Accordingly, Ms. Novo has asserted a cognizable *Monell* claim and this claim will proceed against the City of Danbury for now.

C. **Count Six: Recklessness Claim under Connecticut Law**

Under Connecticut law, "'[r]ecklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person], and the actor must recognize that [the] conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.'" *Matthiessen v. Vanech*, 266 Conn. 822, 832–33, 836 A.2d 394, 402 (2003) (quoting *Bishop v. Kelly*, 206 Conn. 608, 614–15, 539 A.2d 108 (1988)). To establish that a police officer behaved recklessly, a plaintiff must demonstrate an extreme departure from the ordinary care of a police officer. *Rutledge v. Krynski*, No. CV166032664S, 2016 WL 7142794, at *5 (Conn. Super. Ct. Nov. 1, 2016) (citing *Mathiessen*, 266 Conn. at 832–33) ("In the present matter, the plaintiff alleges that the defendant pointed his Taser gun at him, made repeated threats to arrest him, and told him that he was being disrespectful during an encounter in which the plaintiff was pulled over on the side of the road due to a flat tire. The plaintiff has alleged facts inferencing conduct that exhibits an extreme departure from ordinary care of a state trooper under the present circumstances.").

At the pleading stage, Connecticut courts have allowed plaintiffs to proceed on recklessness claims arising from the same set of facts as asserted in their negligence claims. *See*

---

and *Iqbal*, *Leatherman* stands for the proposition that heightened pleading standards were inappropriate in *Monell* cases. *Id*. ("Respondents seek to defend the Fifth Circuit's application of a more rigorous pleading standard on two grounds. First, respondents claim that municipalities' freedom from *respondeat superior* liability, *see Monell*, *supra*, necessarily includes immunity from suit. In this sense, respondents assert that municipalities are no different from state or local officials sued in their individual capacity. Respondents reason that a more relaxed pleading requirement would subject municipalities to expensive and time-consuming discovery in every § 1983 case, eviscerating their immunity from suit and disrupting municipal functions. This argument wrongly equates freedom from liability with immunity from suit."). *Leatherman* therefore does not support Defendants' position with respect to dismissing the *Monell* claim now.

10

*Hutchinson v. Turdubaev*, No. CV106001160S, 2010 WL 4514367, at *2 (Conn. Super. Ct. Oct. 18, 2010) ("[T]he the defendants argue that counts four and six merely restate the negligence allegations made against them in counts three and five and do no more than attach the recklessness tag to the conduct . . . . In the present case, when taken as true, the plaintiff's allegations that the defendants 'purveyed, supplied, delivered, furnished, provided, served, dispensed, distributed and/or gave away alcoholic beverages to minor guests and pledges of the fraternity, including Turdubaev, when they knew or should have known that guests and pledges, including Turdubaev were minors and were already intoxicated' are sufficient to survive a motion to strike on counts four and six. The defendants are correct that reiterating the factual allegations of a cause of action for negligence and renaming the claim 'recklessness' does not transform it into a recklessness action . . . . Here, however, the allegations are made in two separate counts and both the negligence counts and the recklessness counts have factual support."); *see also Clemente v. Cedar Lane Rehabilitation*, No. CV 09–5027120S, 2010 WL 1050428, at *8 (Conn. Super. Ct. February 11, 2010).[4]

Ms. Novo alleges that officers Pardovich, Rink, or Cieply engaged in "willful, reckless and wanton misconduct" on the night in question. Compl., Sixth Count, ¶¶ 12–20.

Defendants argue that Ms. Novo's recklessness claim fails as a matter of law because Ms. Novo has not explicitly described the conduct at issue and has relied on the same facts for both her negligence and recklessness claims. Def. Mem. at 13–14.

The Court disagrees.

---

[4] Defendants cite *Dumond v. Denehy*, 145 Conn. 88 (1958) and its progeny for the proposition that a plaintiff must explicitly detail the alleged reckless conduct. *Dumond*, which concerned the propriety of jury instructions following a complaint alleging negligence and recklessness in a combined count, however, is factually and procedurally inapposite to this case. *See Hutchinson*, 2010 WL 4514367, at *2 ("Here, however, the allegations are made in two separate counts . . . . These allegations, unlike those made by the plaintiff in *Dumond,* support not only a claim for negligence but also a claim for recklessness.").

11

Ms. Novo's decision to reiterate the facts of her negligence count in her recklessness count does not, alone, warrant dismissal of her recklessness claim. *See Hutchinson*, 2010 WL 4514367, at *2; *Clemente*, 2010 WL 1050428, at *8. Furthermore, Ms. Novo has set out explicit facts that, if true, might sustain a cause for recklessness. These allegations include: the officers' failure to maintain a proper distance, remain calm, or warn Ms. Novo that they were going to physically contact her; and the physical conduct itself. Compl., Sixth Count, ¶ 12. Following discovery, the nature and extent of any officer's physical conduct with Ms. Novo should be clearer.

Accordingly, at this stage, Ms. Novo has stated "a plausible claim for relief [that] survives a motion to dismiss," *Iqbal*, 556 U.S. at 679, and her recklessness count will proceed for now.

### D. Amendment of the Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e), or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended pleading. *Id*. at 15(a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id*.; *see also Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000) ("[D]istrict courts should not deny leave unless there is a substantial reason to do so[.]"). The Second Circuit "review[s] the district court's decision to grant a party leave to amend for abuse of discretion." *Monahan v. New York City Dep't of Corr*., 214 F.3d 275, 283 (2d Cir. 2000).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. [.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ms. Novo has moved for leave to remove the emotional distress damages claim from her Complaint. *Cf.* Compl. ¶ 15 ("As a further result, Ms. Novo has suffered and will continue to suffer physical, emotional, and mental pain, anguish and anxiety."); Am. Compl. ¶ 15 ("As a further result, Ms. Novo has suffered and will continue to suffer physical pain."). Defendants have not objected.

Ms. Novo filed her first motion to amend more than 21 days after the filing of Defendants' motion to dismiss. As a result, she may not amend as a matter of course under Rule 15(a)(1), and is seeking leave to amend under Rule 15(a)(2).

Ms. Novo's amendment would narrow the scope of her claims prior to discovery. The timing of her motion neither delays nor prejudices Defendants. *Foman*, 371 U.S. at 182. The Court finds no bad faith or dilatory motive on Ms. Novo's part. *Id.* As a result, it ordinarily would be permissible for Ms. Novo to amend her Complaint in order to remove the emotional distress damages. Mot. for Ct.'s Leave to Am. Compl.; *Friedl*, 210 F.3d at 87 ("[D]istrict courts should not deny leave unless there is a substantial reason to do so[.]").

Because, however, Ms. Novo may wish to amend her Complaint with respect to the now dismissed negligent training and supervision claim against Chief Ridenhour, the Court will give Ms. Novo until **August 9, 2019** to file an Amended Complaint addressing both issues.

Accordingly, Ms. Novo motion to amend her Complaint is **DENIED** without prejudice to renewal by **August 9, 2019.**

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. ECF No. 16. The negligent training and supervision claim is dismissed with respect to Chief Ridenhour, but the claims against the City of Danbury and the claim of recklessness remain in the case.

Because this ruling may result in Ms. Novo seeking to amend her Complaint yet again, Ms. Novo's motion to amend her Complaint is **DENIED** without prejudice to renewal by **August 9, 2019**. ECF No. 20.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of July, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE